RECEIVED
IN MONROE, LA

OCT 1 6 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **DENNIS BOYTE** | **CIVIL ACTION NO. 04-1818** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **STEVE WOOTEN,** | **MAG. JUDGE KAREN L. HAYES** |
| **STEVE WOOTEN CONTRACTING,** | |
| **AND FIRST NATIONAL BANK OF** | |
| **CROSSETT** | |

### OPINION

This is a civil action by Plaintiff Dennis Boyte ("Boyte") against Defendant First National Bank of Crossett ("FNBC"), arising from contract proceeds paid to FNBC.

This matter came for trial before the Court on July 16, 2007. At the conclusion of Boyte's case, FNBC orally moved for a judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c). The Court took that motion under advisement. FNBC re-urged its motion at the conclusion of trial. The Court again took the motion under advisement and set a post-trial briefing schedule for the parties.

The parties have submitted timely post-trial briefs. See [Doc. Nos. 57, 58, & 62].

The Court hereby enters the following findings of fact and conclusions of law. To the extent that any finding of fact constitutes a conclusion of law, the Court hereby adopts it as such, and to the extent that any conclusion of law constitutes a finding of fact, the Court hereby adopts it as such.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  *Findings of Fact*

Boyte is an adult individual who resides in Winnsboro, Louisiana. FNBC is a national bank organized under the laws of the United States and the State of Arkansas. FNBC does business solely in the State of Arkansas.

Boyte contracted with Dawson Farms, LLC ("Dawson Farms") to construct a cold storage building in Delhi, Louisiana, for $1,128,265.84. On April 28, 2003, Steve Wooten ("Wooten"), on behalf of Steve Wooten Contracting, Inc. ("Wooten Contracting"), made a bid to provide all equipment, labor, and material to perform the concrete work for the Dawson Farms project. On December 23, 2003, Wooten Contracting submitted a separate bid for additional concrete work not included in the original project.

On January 12, 2004, Boyte contracted with Wooten Contracting to perform the concrete work for the Dawson Farms project for the amount of $224,790.00.

Wooten had been a customer of FNBC for 12-14 years, and during that time his loan officer had been William A. Lindsay ("Lindsay"), Executive Vice President. By the time Wooten and Boyte executed the contract on the Dawson Farms project, Wooten and/or Wooten Contracting had as many as four delinquent loans with FNBC. Wooten Contracting's business operating account was also in overdraft. Lindsay[1] informed Wooten that his loans would be

---

[1]Lindsay was deposed on February 15, 2006, in connection with this litigation. Lindsay died prior to trial, and the Court's findings of fact with regard to his statements are based upon his deposition, see Fed. R. Evid. 804(b)(1), and the testimony of Wooten and Boyte.

At trial, FNBC raised a hearsay objection to Wooten's testimony about his conversations with Lindsay. However, the Court found those statements admissible under Fed. R. Evid. 801(d)(2) (A) & (D).

2

called for payment if he did not assign the Dawson Farms subcontract to secure a new loan from FNBC. Lindsay told Wooten that Lindsay was in "hot water" with the President of FNBC and thought that a new loan would be the best way for Wooten to show some activity on his accounts.      On January 15, 2004, Wooten faxed a memorandum to Boyte, stating as follows: "SWC request [sic] that checks be made out to SWC & First National Bank of Crossett." The memorandum was signed and dated by Wooten. Boyte also signed and dated the memorandum and sent it back to Wooten. Prior to faxing the memorandum, Wooten told Boyte that he needed him to sign it in order to get FNBC to provide financing for the Dawson Farms project.

On January 16, 2004, Wooten and Lindsay executed a Commercial Security Agreement ("Security Agreement") in which FNBC loaned Wooten Contracting $110,050.00 in a closed-end loan. The loan had a maturity date of May 15, 2004, and Wooten was not required to make regular monthly payments. There was a $50.00 set-up or document charge. The remainder of the money loaned was a renewal of pre-existing debt by moving it into a new note. Lindsay testified that a small amount of $10,000.00 or less was new money, but the Court finds that even that amount was used to make payments on existing loans and interest.

According to the testimony of Carl Sivils ("Sivils"), Vice President and Manager of the Lending Department of FNBC, none of the money from the January 16, 2004 loan was deposited into a checking account for Wooten or Wooten Contracting. On the date of the loan, bank records show that the funds were used to pay off an outstanding loan to Wooten of $102,265.83. The funds were also used to pay the interest due of $5,312.97 on another loan to Wooten. The remaining loan funds were used to make regular and late fee payments on Wooten's outstanding loans. Finally, Wooten Contracting's payroll account was debited

3

$3,201.04 for interest due on loan payments. Therefore, the entire amount of the January 16, 2004 loan, plus an additional

$3,201.04, was applied to pre-existing debt, interest, and fees.

According to the Security Agreement, the January 16, 2004 loan was secured by the "Assignment of Dawson Farms LLC Cold Storage Facility Construction Sub-Contract Thru Dennis Boyte, Contractor, Winnsboro, LA 71295" and Wooten's personal guarantee. Lindsay and Wooten made a verbal side agreement for FNBC to keep 50% of the proceeds from the subcontract. Wooten expected to make about 25% profit on the Dawson Farms project and thought he would have sufficient funds to pay subcontractors and materialmen. Wooten had previously assigned contract proceeds to FNBC and had always been able to obtain the funds necessary to pay the subcontractors and materialmen on the project.

Lindsay and Wooten jointly signed a January 16, 2004 letter, written on FNBC letterhead, to Boyte. The letter stated:

> Mr. Steve Wooten, the president of [Wooten Contracting] has assigned the proceeds of the Dawson Farms cold storage facility contract to our bank in connection with the financing for the project.
>
> Please make all checks payable to his company and First National Bank and mail the checks directly to my attention at 218 Main St., Crossett, Arkansas 71635.
>
> Please also acknowledge this assignment by signing the copy of this letter and returning it to me in the envelope provided.

Thank you for your assistance in this matter.

Boyte signed the letter.

Wooten Contracting submitted three progress invoices to Boyte for payment:

    (1)    For labor, services, equipment or materials furnished at the job site

4

through February 13, 2004, in the amount of $96,097.72;

(2) For labor, services, equipment or materials furnished at the job site through March 8, 2004, in the amount of $66,500.00; and

(3) For labor, services, equipment or materials furnished at the job site through April 1, 2004, in the amount of $50,952.77.

Boyte issued checks in these three amounts payable to Wooten Contracting and FNBC. In total, Boyte paid Wooten and FNBC $213,550.49.

For each check, Wooten signed a Conditional Waiver and Release of Progress Payment ("release"), which stated that subcontractors and materialmen had been paid. Wooten delivered each check and release to Lindsay. Lindsay then controlled how the funds were disbursed. From the amounts Lindsay deposited into his FNBC accounts, Wooten paid materialmen and subcontractors. However, he did not always have sufficient funds to do so. When Wooten's funding was short, Lindsay sometimes allowed Wooten to take advances from his loan, even though it was not a line of credit. On other occasions, Lindsay refused to advance funds to Wooten.

The first progress payment check, in the amount of $96,097.72, was negotiated by Wooten and Lindsay and deposited into Wooten Contracting's checking account on February 13, 2004. On that day, FNBC debited the checking account $48,048.86 as a principal payment on Wooten's January 16, 2004 loan, bringing the loan down to $62,001.14.

After the first progress payment, FNBC advanced Wooten money from the January 16, 2004 loan on three occasions. On February 20, 2004, FNBC deposited a $4,000.00 advance into Wooten Contracting's checking account. On March 3 and 4, 2004, FNBC deposited $5,500.00 and $1,500.00 advances, respectively, into Wooten Contracting's payroll account. These advances brought Wooten's loan balance back up to approximately $73,001.14.

5

The second progress payment check, in the amount of $66,500.00, was negotiated by Lindsay and Wooten and deposited into Wooten Contracting's checking account on March 10, 2004. FNBC debited $44,250.00 (the account was debited in the separate amounts of $11,000.00 and $33,250.00) as payments on the January 16, 2004 loan.

After the second progress payment, FNBC advanced Wooten money from the January 16, 2004 loan on three more occasions. On March 19, 2004, FNBC deposited a $1,500.00 advance into Wooten Contracting's checking account and a $10,200.00 advance into Wooten Contracting's payroll account. On March 30, 2004, FNBC deposited a $4,500.00 advance into the payroll account. By the end of March, 2004, the balance on the January 16, 2004 loan was $48,551.14.

The third progress payment check, in the amount of $50,952.77, was negotiated by Lindsay and Wooten and deposited into Wooten Contracting's checking account on April 2, 2004. The same day, FNBC debited $13,000.00 as a payment on the January 16, 2004 loan.

After the third progress payment, FNBC advanced Wooten money from the January 16, 2004 loan on three more occasions. On April 13, 20, and 28, 2004, FNBC advanced $5,000.00, $3,200.00, and $4,750.00, respectively, depositing each of these amounts in Wooten Contracting's checking account. By the end of April 2004, the balance on the January 16, 2004 loan was $48,501.14.

Boyte issued a fourth check to Wooten Contracting in the amount of $9,750.00. Wooten also deposited this check into Wooten Contracting's checking account on April 2, 2004. FNBC was not listed as a co-payee because the payment was for additional work not covered by the January 12, 2004 contract.

Robert Humble ("Humble"), the President of Century Ready Mix Corporation

6

("Century"), testified that Century provided the concrete for the original Dawson Farms project and for an addition to the project, but was never paid in full. Wooten requested additional funds from Lindsay several times in order to pay Century, but Lindsay refused to advance the funds.

Similarly, Wooten had insufficient funds to pay Hercules Concrete Pumping/MS, Inc. ("Hercules") $10,379.50 for concrete pumping service provided for the Dawson Farms project.

Prior to issuance of the third and final progress payment to Wooten and FNBC, Boyte learned that Century had not been paid in full. Before he issued the check to Wooten and FNBC, Boyte spoke with Wooten about this bill and was told that it had been paid. Boyte also spoke with someone at Century and was told that the bill had been paid.[2] Therefore, Boyte issued the third progress payment check to Wooten and FNBC and the fourth separate check to Wooten without retaining any funds.

On May 24, 2004, Century filed a Statement of Lien and Privilege for Labor and Materials ("lien") in the amount of $87,111.72 under Register No. 314266 of the records of Franklin Parish, Louisiana. Century also filed a lawsuit in Franklin Parish, Louisiana, in the matter styled, Century Ready Mix Corp. v. Dennis Boyte, d/b/a Dennis Boyte Construction and Dawson Farms, L.L.C., Docket No. 38,101, Parish of Franklin, State of Louisiana.

Boyte also received a demand for payment in the form of an Accounts Receivable Ledger Card from Hercules.

Following the Dawson Farms project, Wooten declared personal bankruptcy and just

---

[2]Humble testified that he had received a check from Wooten, but it did not "clear" the bank.

allowed Wooten Contracting to "die."

## B.    *Conclusions of Law*

Boyte asserts several claims against FNBC. First, Boyte contends FNBC breached a

contract or agreement with him by failing to pay Wooten Contracting's materialmen and

subcontractors.[3]  Related to this claim, Boyte contends that Wooten Contracting was prohibited

under Louisiana Civil Code article 2299 from assigning the proceeds due to third-party

contractors. Second, Boyte contends that FNBC committed malfeasance by failing to pay

Wooten Contracting's materialmen and subcontractors. Third, Boyte contends that FNBC

committed negligent misrepresentation by assuming the duty to provide accurate information,

breaching that duty, and causing damages to him. Fourth, Boyte contends that FNBC is liable

under a detrimental reliance theory because it made a promise to him, breached that promise,

and caused the resulting damages.

FNBC raises defenses to Boyte's claims based on its alleged status as a  holder-in-

due-course and under the Louisiana Private Works Act.

### 1.    **Jurisdiction**

The Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity

---

[3]FNBC notes that Boyte did not specifically list a breach of contract claim in his original
Petition, but admits that he did so in later pleadings and at trial. Boyte asserted in his deposition
that there was a breach of an agreement whereby FNB had undertaken to pay the subcontractors.
This claim was addressed in Magistrate Judge Hayes' Report and Recommendation on FNBC's
Motion for Summary Judgment. The Court has considered Boyte's breach of contract claim, just
as it has considered FNBC's defense under the Louisiana Private Works Act, because they were
contained in the pre-trial order, no objection was made to their inclusion, and evidence was
presented at trial. See Portis v. First Nat. Bank of New Albany, Miss., 34 F.3d 325, 331 (5th Cir.
1994).

8

between Plaintiff Boyte and Defendants FNBC, Wooten, and Wooten Contracting, Inc., and the

amount in controversy exceeds $75,000.00, exclusive of interest and costs.[4]

"Federal diversity jurisdiction provides an alternative forum for the adjudication of

state-created rights, but it does not carry with it generation of rules of substantive law . . . .

[Consequently], federal courts sitting in diversity apply state substantive law and federal

procedural law." Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 426 (1996) (citing

Erie R. Co. v. Thompkins, 304 U.S. 64 (1938)).

### 2.    Breach of Contract/Quasi-Contract

A party claiming the existence of a contract has the burden of proving that the contract

existed. The Hunter Co., Inc. v. Comm. of Bossier Levee Dist. of La., 115 So.2d 226 (La. App.

2 Cir. 1959). Under Louisiana law, four elements are necessary for the confection of a valid

contract: (1) the parties must have the capacity to contract; (2) the parties must freely give their

mutual consent to the contract; (3) the parties must have a cause or reason for obligating

themselves; and (4) the contract must have a lawful purpose. Ingraffia v. NME Hospitals, Inc.,

943 F.2d 561, 565 (5th Cir. 1991) (internal citations omitted).

The interpretation of a contract is the determination of the common intent of the parties.

La. Civ. Code. art. 2045.  To ascertain the parties' intent, the court must first look to the words

and provisions of the contract. Amend v. McCabe, 664 So.2d 1183, 1187 (La.1995); Hayes v.

Eagle, Inc., 876 so.2d 108, 110 (La. App. 4 Cir. 2004). When the words of a contract are clear

and explicit and lead to no absurd consequences, no further interpretation may be made in

---

[4]Wooten and Wooten Contracting were named as Defendants, but have not been served
and are not before the Court.  Nevertheless, jurisdiction is determined at the time of removal, so
the Court notes that Wooten is an individual citizen domiciled in Arkansas, and Wooten
Contracting, Inc. is an Arkansas corporation.

9

search of the parties' intent. La. Civ. Code. art. 2046.

Parol or extrinsic evidence is generally inadmissible to vary the terms of a written contract unless the written expression of the common intention of the parties is ambiguous. Campbell v. Melton, 817 So.2d 69, 75 (La. 2002).

It is clear that there was no mutual consent between FNBC and Boyte as to the terms of a contract requiring FNBC to pay Wooten Contracting's materialmen or subcontractors.

However, Boyte contends that a contract or agreement between Boyte and FNBC was confected when Wooten assigned the Dawson Farms subcontract to FNBC. Boyte argues that FNBC, as assignee, was obligated in the same manner as the assignor, Wooten, to pay subcontractors and materialmen.

The Court disagrees. Boyte's argument assumes that the contract itself was assigned to FNBC. In this case, the Court finds that the only "assignment" in this matter was actually Wooten's pledge of the proceeds of the contract to secure FNBC's January 16, 2004 loan to him. See Angelle v. Entergy Builder's Co., Inc., 496 So.2d 509 (La. App. 1st Cir. 1986) (A party may assign only the benefits or provisions of a contract without the obligations of the contract); see also American Bank and Trust Co. of Baton Rouge v. Louisiana Savings Ass'n, 386 So.2d 96, 104 (La. App. 1st Cir. 1980) ("No authority has been pointed out to us, and we know of none, which prohibits a banking institution from obtaining an assignment of benefits as security for a loan which it has made . . . .").

 In support of its conclusion, the Court relies on the only contract or written agreement between FNBC and Wooten pertinent to the Dawson Farms project. The Security Agreement between FNBC and Wooten show only that the Dawson Farms subcontract served as collateral for the loan consolidating Wooten's previous debt at FNBC. There are no provisions in the

10

Security Agreement obligating FNBC to pay Wooten's subcontractors and materialmen, nor is there a separate assignment contract. Thus, based on the plain language of the Security Agreement, FNBC did not consent to undertake Wooten's obligations in the contract between Boyte and Wooten Contracting.

Even if the Court found the language of the collateral assignment in the Security Agreement to be ambiguous, Boyte has failed to show through parol evidence that FNBC accepted an assignment of Wooten and Wooten Contracting's obligations under its contract with Boyte. Neither the testimony of Lindsay, nor the testimony of Wooten supports a finding that FNBC agreed to pay Wooten Contracting's subcontractors and materialmen. Lindsay and Wooten testified that they had an oral agreement to a fifty-fifty split of the proceeds. Wooten and Lindsay further testified that Wooten believed the split would permit him to pay his subcontractors and materialmen. Thus, there is no evidence that FNBC ever intended or did, in fact, accept an assignment of the obligations of Wooten and Wooten Contracting under its contract with Boyte.

Finally, the Court finds that Boyte also has no quasi-contractual action under Louisiana Civil Code article 2299. Article 2299 provides that "[a] person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it." However, there is no dispute that Boyte owed money to Wooten and Wooten Contracting under their contract. Further, there is no dispute that Wooten and Wooten Contracting owed money to FNBC. Therefore, the assignment of proceeds from the Dawson Farms project does not create a cause of action under article 2299. See McDonald v. Barker Auto Sales, Inc., 810 So.2d 1242, 1244 (La. App. 2 Cir. 2002) (No cause of action under article 2299 where the record clearly showed that "Barker Auto Sales, which received the payment, was due the balance of [the

11

payor's note], even though the check provided to Barker Auto Sales had been issued to the payor by his insurance company to pay for repairs to his vehicle performed by plaintiff)."[5]

Accordingly, judgment is rendered in favor of FNBC and against Boyte on his breach of contract and quasi-contract claims.

### 3.    Malfeasance

Malfeasance has been recognized as a cause of action arising under Louisiana Civil Code Article 2315. Ellett v. Newland, 132 So. 761, 762 (La. 1931). "'Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.' La. C.C. Art. 2315. Malfeasance is generally defined as 'the doing of an act which is wholly wrongful or unlawful * * * the doing of an act which a person ought not to do at all.'" Id.; see also State ex rel. Jones v. Doucet, 14 So.2d 622, 758 (La. 1943) ("Malfeasance is the unjust performance of some act which the party had no right, or which he had contracted not, to do.") (citing 2 Bouv.Law Dict., Rawles Third Rev., p. 2067; BLACK'S LAW DICTIONARY, 3rd Edition, page 1146; Glisson v. Biggio, 141 La. 209, 74 So. 907)).

Ellett and other cases discussing malfeasance are generally concerned with individual liability of corporate officers and directors. Officers and directors are "the agents of the corporation and 'as the directors are the agents of the bank, they are not responsible to third persons for mere negligence of duty or nonfeasance toward their principal,'" but they may be held for acts constituting malfeasance. 132 So. at 762.

However, Boyte does not bring any cause of action against the individual officers or directors of FNBC. A plaintiff may theoretically pursue a cause of action for malfeasance

---

[5]The appellate court also relied on other grounds not applicable here.

12

against a corporation if he can show that the corporation, through its agent, acted wholly wrongfully or unlawfully. This is a significant burden, which cannot be met by showing mere negligence.

The Court finds that Boyte failed to prove by a preponderance of the evidence that FNBC's conduct in this matter was wholly wrongful or unlawful. To be sure, as discussed more fully below, the Court finds that FNBC did not act in good faith in its dealings with Boyte. Nevertheless, FNBC's conduct was not the type of conduct, such as in Ellett, where officers and directors "knowingly committed a wrongful criminal act." 132 So. at 762.

Judgment is rendered in favor of FNBC and against Boyte on his malfeasance claim.

### 4.    Negligent Misrepresentation

In their post-trial briefs, the parties also dispute whether Boyte's claim of malfeasance may be recoverable under Article 2315 as negligent misrepresentation. In her April 28, 2006 Report and Recommendation, adopted by the Court, Magistrate Judge Hayes found that FNBC had voluntarily undertaken to give Boyte information and was thus obligated to give him accurate information. She found that there was a genuine issue of material fact whether the information given by FNBC was inaccurate or misleading, and FNBC was liable for damages "particularly if, as is claimed by [Boyte], FNB[C] was aware that the information it gave him was inaccurate or misleading." [Doc. No. 31, p. 5].

Applying this test, Louisiana courts have recognized a cause of action under Article 2315 for negligent misrepresentation, rather than malfeasance. See Waddles v. LeFleur, 950 So.2d 937, 942 (La. App. 3 Cir. 2007) (A plaintiff may prevail on a negligent misrepresentation claim under Article 2315 by showing that the defendant had a "legal duty . . . to supply correct information, a breach of that duty, and damage to the plaintiff caused by the breach."); see also

13

Young v. First Nat'l Bank of Shreveport, 794 So.2d 128, 135 (La. App. 2 Cir. 2001) ("[La. Civ.

Code] art. 2315 encompasses an action for negligent misrepresentation. In order for that

doctrine to apply, there must be a legal duty on the part of defendant to supply correct

information and a breach of that duty must cause damage to plaintiff.") (citing Watermeier v.

Mansueto, 562 So.2d 920 (La. App. 5 Cir.1990)).

     The Court finds that Boyte has proven negligent misrepresentation by FNBC. FNBC is

correct that it had no duty to Boyte, who was not FNBC's customer, to supply information

about Wooten's financing. However, FNBC ignores the legal precept recognized by Magistrate

Judge Hayes: if a party voluntarily assumes a legal duty where the law imposes none, it can

then be held responsible for its negligent performance of that duty. See Cypress Oilfield

Contractors, Inc. v. McGoldrick Oil Co., Inc., 525 So.2d 1157, 1162 (La. App. 3 Cir. 1988)

(The third-party defendant bank owed no duty to third-party plaintiff "to furnish it information

regarding . . . [the] financial condition" of the bank's customer, a contractor, but "when [the

bank] stated clearly [in a letter to the plaintiff] that the financial condition [of its customer] was

not in jeopardy it *assumed* a duty to insure that the information it volunteered was correct.").

     In this case, FNBC, like the bank in Cypress, assumed a duty when its officer, Lindsay,

voluntarily drafted and signed a letter to Boyte. He was under no duty to provide Boyte any

information about Wooten's accounts at FNBC, but did so when he stated that "Mr. Steve

Wooten, the president of [Wooten Contracting] has assigned the proceeds of the Dawson Farms

cold storage facility contract to our bank **in connection with the financing for the project."**

(emphasis added). The evidence is undisputed that all of the money loaned was applied to pre-

existing debt, fees, and interest. Therefore, FNBC, through Lindsay, affirmatively

misrepresented to Boyte that the Dawson Farms proceeds were assigned "in connection with the

14

financing" for the Dawson Farms project.

FNBC, through Lindsay, then breached the duty to provide accurate information to Boyte. This was not a case where Lindsay simply failed to make appropriate inquiries into Wooten's finances. Lindsay, as Wooten's long-standing banker, was well aware that Wooten and Wooten Contracting were in financial trouble. Lindsay was in "hot water" with his boss at FNBC over Wooten's delinquent loans, so he worked out the consolidated loan for Wooten and a verbal side deal to split the Dawson Farms project proceeds. He also applied the January 16, 2004 loan proceeds to cover Wooten's delinquent loans, late fees, and interest. Lindsay knowingly made a misleading and inaccurate statement to Boyte that the Dawson Farms subcontract proceeds had been assigned "in connection with the financing for that project," and FNBC is liable for that statement.

Further, because of Lindsay's misrepresentation, Boyte suffered damages in this matter. Although Wooten testified that he had spoken with Boyte about making payments to Wooten Contracting and FNBC jointly, his statements were confirmed by his banker, Lindsay, on FNBC letterhead. If all Boyte received was a memorandum from Wooten, then Boyte would be unable to show that FNBC's actions in this matter were a cause-in-fact of his injuries or damages. However, Boyte testified that he relied on Lindsay's statement that FNBC was providing the financing for this project when Lindsay knew the money loaned to Wooten would go towards pre-existing debt, fees, and interest.[6]

---

[6] The Court recognizes that FNBC later advanced Wooten funds from the loan, but on January 16, 2004, the date the letter was sent to Boyte, Lindsay knew the loan funds were allocated to paying pre-existing debt, fees, and interest. Further, if anything, the bank records and Wooten's testimony about the later advances only emphasize Lindsay's control over the allocation of funds from the January 16, 2004 loan.

15

The Court finds that Boyte has proven that he suffered harm because of FNBC's negligent misrepresentation. Because this cause of action sounds in tort, the Court must consider comparative fault principles. See Cypress, 525 So.2d at 1162-63.

Having fully reviewed Boyte's actions, the Court finds that he bears no fault. Based on FNBC's January 16, 2004 letter to him, Boyte acted reasonably in issuing the first two progress payment checks to Wooten Contracting and FNBC jointly and obtaining releases from Wooten alone. Prior to issuance of the third check to Wooten Contracting and FNBC, Boyte was contacted by Century and learned that its bill had not been paid in full. However, before he issued the third progress payment check to FNBC and Wooten, Boyte checked with both Wooten and Century. He was assured by both that Century had been paid. Accordingly, Boyte was reasonable in issuing the third progress payment check to FNBC and Wooten and a separate check to Wooten for additional concrete work.

Judgment is rendered in favor of Boyte and against FNBC on his negligent misrepresentation claim.

### 5.    Detrimental Reliance

Louisiana Civil Code article 1967 states:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

The Louisiana Supreme Court has expressed a plaintiff's burden in a detrimental reliance case as follows:

> The doctrine of detrimental reliance is "'designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions,

16

representations, or silence.'" <u>Babkow v. Morris Bart, P.L.C.</u>, 1998-0256 (La. App. 4 Cir. 12/16/98), 726 So.2d 423, 427 (quoting <u>Orr v. Bancroft Bag, Inc.</u>, 29,046 (La. App. 2 Cir. (1/22/97), 687 So.2d 1068, 1070)). To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. <u>Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc.</u>, 2003-1662 (La. App. 4 Cir. 3/17/04), 871 So.2d 380, 393, writ denied, 2004-0969 (La.6/25/04), 876 So.2d 834; <u>Babkow</u>, 726 So.2d at 427. Significantly, to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract. <u>Babkow</u>, 726 So.2d at 429 (citing <u>Morris v. People's Bank & Trust Co.</u>, 580 So.2d 1029 (La. App. 3 Cir.), writ denied, 588 So.2d 102 (La.1991)).

<u>Suire v. Lafayette City-Parish Consol. Government</u>, 907 So.2d 37, 59 (La. 2005). "A claim under this provision is based on promissory estoppel, not tort." <u>Roxco Ltd. v. Harris Specialty Chemical, Inc.</u>, 85 Fed. Appx. 375, 378 (5th Cir. 2004). Therefore, while the test speaks to a "representation," the "basis of detrimental reliance is the idea that a person should not harm another person by making promises that he will not keep. . . Thus, the focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment." <u>Suire</u>, 907 So.2d at 59.

Lindsay made a representation, a promise, to Boyte that Wooten assigned the proceeds of the Dawson Farms project to FNBC in connection with the financing for the project when the proceeds were, in actuality, assigned to cover prior delinquent loans. At the time Lindsay made that promise, he also knew, or, at the very least, should have known that Boyte would rely on his letter and the representation it contained in making checks payable to FNBC and Wooten Contracting. Boyte testified that he would never have agreed to make checks payable to FNBC and Wooten Contracting if he had known the true nature of Lindsay's agreement with Wooten, Wooten's delinquent history with the bank, the fact that money was not being loaned to Wooten

17

for this project, and the fact that Lindsay controlled the funds. For this and the additional

reasons set forth in the Court's conclusions of law on Boyte's negligent misrepresentation

claim, the Court concludes that Boyte has met his burden of showing detrimental reliance.

Accordingly, judgment is rendered in favor of Boyte and against FNBC on his detrimental

reliance claim.

### 5.     Defenses

#### a.     Holder in Due Course

Under Louisiana Revised Statute 10:3-106(d), an entity may be a holder in due course

of an instrument if it "took the instrument (I) for value, (ii) in good faith" and meets certain

other requirements. La. Rev. Stat. 10:3-106(d)(2). "Good faith . . . means honesty in fact and

the observance of reasonable commercial standards of fair dealing." La. Rev. Stat. 10:2-201.

Applying the specific statutory definition of "good faith," the Court concludes that FNBC,

through Lindsay, was neither honest in fact, nor observed commercial standards of fair dealing

with Boyte for the reasons set forth above. Thus, the holder in due course defense is not

available to FNBC.

#### b.     Louisiana Private Works Act

FNBC argues that it also has a defense to Boyte's claims under Louisiana's Private

Works Act.

The Louisiana Private Works Act, La. Rev. Stat. 9:4801, et seq., grants contractors,

laborers, sellers, and others a privilege on an immovable to secure the price of their work. La.

Rev. Stat. 9:4801. Under this statute, an owner is liable for claims arising out of the

performance of work done pursuant to a contract on the owner's property by subcontractors,

laborers, and sellers, despite their lack of contractual privity with the owner.

18

An owner may avoid personal liability for such claims "against him and the privileges securing them when the claims arise from the performance of a contract by a general contractor for whom a bond is given and maintained as required by . . . 9:4812 and when notice of the contract with the bond attached is properly and timely filed as required by . . . 9:4811." La. Rev. Stat. 9:4802(C). Thus, an owner must require the general contractor to provide a bond and must file a copy of the notice of contract with that bond attached.

In this case, Dawson Farms did not require Boyte to maintain a bond nor file the contract with the bond attached. Therefore, FNBC argues that Dawson Farms could not maintain a cause of action against FNBC for the costs of materials used to construct the cold storage facility. A fortiori, the general contractor, Boyte, cannot maintain a cause of action against FNBC for the costs of materials.

However, the Court declines to extend the provisions of the Louisiana Private Works Act in a way that is neither consistent with the express language of the statute, nor the Louisiana courts' interpretation of the statute. Because of its failure to comply with the statute, Dawson Farms is not immune from suit by subcontractors and materialmen, nor is it protected by a bond procured by Boyte. On the other hand, the statute does **not** affirmatively prohibit Dawson Farms from pursuing a cause of action otherwise available under Louisiana law against FNBC or any other wrongdoer if the acts of that wrongdoer resulted in claims against it. Certainly, a defendant in such a case might raise Dawson Farms' failure to mitigate damages under the Louisiana Private Works Act, but the Court finds no case law, nor has it been provided any, even suggesting that Dawson Farms would be prohibited from pursuing a lawsuit.

This argument weakens even more when the Court considers Boyte's plight. The Louisiana Private Works Act protects the owner from personal liability, but not a general

19

contractor like Boyte.  Accordingly, FNBC is not entitled to a defense under the Louisiana

Private Works Act.

### 6.    Damages

Having rendered judgment in favor of Boyte on his negligent misrepresentation and

detrimental reliance claims, the Court must now determine damages.

Boyte seeks to recover the amounts due to the subcontractors, a total of $97,491.22,

attorney's fees, damages for loss of business reputation and bonding, and costs.  FNBC

contends that Boyte is not entitled to damages.

The Court finds that Boyte is not entitled to recover damages for loss of business

reputation and bonding, nor is he entitled to attorney's fees.  A party may recover for damage to

business reputation, but must provide adequate evidence to support such an award.  In Simpson

v. Restructure Petroleum Marketing Servs., Inc.,  830 So.2d 480 (La. App. 2 Cir. 2002), the

Louisiana Second Circuit Court of Appeals explained the proof required:

> In seeking damages for loss of business reputation, a business must prove that it
> had a good reputation. Mahfouz v. Ogden, 380 So.2d 646 (La. App. 1 Cir.1979).
> Next, the plaintiff must show how the business reputation was affected to his
> detriment. Koncinsky v. Smith, 390 **11 So.2d 1377 (La. App. 3 Cir.1980).
> Further, **outside testimony is needed to prove that a business reputation was
> damaged.** See Lawrence W. Farris, Inc. v. Hughes-Turner Construction Co.,
> Inc., 413 So.2d 615 (La. App. 1 Cir.1982).
>
> The manner of proving a loss of business reputation as indicated by the
> jurisprudence requires a review of business accounting records to measure the
> loss to the business. The loss should also be established by the testimony of
> customers and other parties who had dealings with the business. Although the
> loss cannot be established precisely, it affects an economic interest which
> partially comprises the value of the business and is therefore a pecuniary loss.
> See, Revision Comments (b), La. C.C. art.1998.

Id. at 486 (emphasis added).

In this case, neither Boyte nor any other witness testified about the damage to his

20

business or his reputation. Boyte testified about his difficulty obtaining a bond for projects, but, as FNBC pointed out, Boyte obtained the contract for the job at issue in this lawsuit without a bond. Boyte did not testify about how his difficulty with bonding has caused a detriment to his business.

Even if Boyte's testimony about his difficulty with bonding is sufficient to show a detriment to his business, he presented no outside testimony. Accordingly, Boyte is not entitled to recover damages for loss of business reputation.

Boyte also has no basis for recovery of attorney's fees. Under Louisiana law, attorney's fees are not recoverable unless provided for by statute or contract. There are no contractual provisions related to attorney's fees in this matter, nor has Boyte pointed to any statute under which he may recover attorney's fees. Boyte did contend that he is entitled to recover attorney's fees for FNBC's bad faith breach of its agreement with him, but the Court has concluded that Boyte failed to prove breach of contract.

However, Boyte is entitled to recover damages for the amounts due and owing to Century and Hercules and for all costs of this matter. While Boyte has not yet paid Century and Hercules, there is no dispute that these two entities provided the work and services billed for and that they have presented a claim for payment to Boyte. Century has also filed a lien and a lawsuit against Boyte to protect its interest.[7]

Accordingly, the Court awards Boyte $97,491.22 in damages, plus all recoverable

---

[7]While Century and Hercules are not parties to this action, the Court is certain that Boyte and his attorney are cognizant of their respective duties to satisfy outstanding amounts owed to these non-parties.

costs.[8]

## II. CONCLUSION

For the foregoing reasons, the Court finds in favor of Boyte and against FNBC on the

claims of negligent misrepresentation and detrimental reliance. To this extent, FNBC's oral

motion for judgment on partial findings is DENIED. The Court further finds in favor of FNBC

and against Boyte on the claims of breach of contract, quasi-contract, and malfeasance. To this

extent, FNBC's oral motion for judgment on partial findings is GRANTED. The Court awards

Boyte damages in the amount of $97,491.22, to be paid jointly to Boyte and his attorney.

Boyte's attorney is hereby ORDERED to oversee payment of the amounts owed to Century and

Hercules. All costs are to be taxed against FNBC.

MONROE, LOUISIANA, this __16__ day of __October__,

2007.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[8]Even if Boyte had been comparatively liable for his damages under a negligent
misrepresentation analysis, the Court would not reduce his award because he has also prevailed
on his detrimental reliance claim. See Industrias Magromer Cueros y Pieles S.A. v. Louisiana
Bayou Furs Inc., 293 F.3d 912, 924 (5th Cir. 2002) ("Louisiana law does not allow comparative
fault allocations on detrimental reliance . . . claims." (citing La. Civ. Code Ann. art. 2323 (West
1997)); see also La. Civ. code art. 2323 ("[I]f a person suffers . . . loss as a result partly of his
own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for
recovery of damages shall not be reduced.").

22